AYERS *v.* WATSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 119. Argued November 18, 1889. — Decided December 9, 1889.

Before former declarations of a witness can be used to impeach or contradict his testimony, his attention must be drawn to what may be brought forward for that purpose, with particularity as to time, place and circumstance, so that he can deny it, or make any explanation tending to reconcile what he formerly said with what he is testifying.

After a witness' testimony has been taken, committed to writing and used in the court, and by death he is placed beyond the power of explanation, then, in another trial had after his death, former declarations by him, whether by deposition or otherwise, contradictory to those made by him in that testimony, cannot for the first time be brought forward and used to impeach it.

THIS is the same cause brought here and heard at October term, 1884, and reported 113 U. S. 594. The case now made is thus stated in the opinion of the court:

This is an action of ejectment brought by Watson, the original plaintiff, in the District Court for the county of Bell, in the State of Texas, and afterwards removed into the Circuit Court of the United States for the Northern District of that State. It was twice tried before a jury, which failed in each of these trials to come to an agreement. It was tried a third time, which resulted in a verdict and judgment for the plaintiff. A writ of error was taken to that judgment, by which it was brought to this court and reversed. The case is reported as *Ayers* v. *Watson*, 113 U. S. 594. It was thereupon remanded to the Circuit Court for a new trial, where a verdict was again had for the plaintiff, and the judgment rendered on that verdict is before us for review.

The details of the controversy may be found in the report of the case above mentioned. While it was pending in the District Court of Bell County the following agreement between the parties was made, which simplifies the case very much:

" A. E. Watson
            *v.*
Frank Ayers, et al.

" It is agreed and admitted by the defendants, for the purpose of this trial at this term of the court, that A. E. Watson, plaintiff in this cause, is entitled to all the right, title and interest granted by the State of Texas to the heirs of Walter W. Daws on September 16, A.D. 1850, said land patented being one-third of a league, described in said patent No. 542, vol. 8, and which said land is described in plaintiff's petition ; but defendants say that said one-third of a league of land so patented as aforesaid to the heirs of Walter W. Daws is covered by the grant of the government of Coahuila and Texas to Maximo Moreno of eleven leagues of land, as set forth more fully in defendants' petition; which said eleven-league grant is an older and superior title to that of plaintiff, and the title to which is in the defendants in this cause.

" X. B. SAUNDERS,
" W. T. RUCKER,
" F. H. SLEEPER, and
" A. M. MONTEITH,
" *Att's for defendants.*"

By this agreement it will be seen that the sole question at issue was whether the land in controversy was covered by the eleven-league grant to Maximo Moreno. A plat of that survey is found in the bill of exceptions. On the trial which resulted in the judgment, which we are now called to reconsider, and which, as we understand it, was the fourth time the case had been tried by a jury, the defendant introduced the deposition of F. W. Johnson, the surveyor who had made the survey under the Moreno grant. It seems that his deposition had been taken twice in this action, and, though the details of those trials are not before us, it had no doubt been used in them. But prior to the trial which we are now reviewing, he had died. It appears from the bill of exceptions that in these depositions he had been cross-examined by plaintiff's counsel. Plaintiff in rebuttal to this testimony of Johnson offered

in evidence a deposition of the said Johnson taken in 1860, in a suit between other parties, in which his testimony with regard to the matters to which he testified in the depositions offered by defendant varied materially from these latter depositions. To the introduction of this deposition of 1860 the defendants objected, and, their objection being overruled, took this exception. As we think the judgment of the court below must be reversed on account of this ruling, all that relates to it in the bill of exceptions is here reproduced :

" It was admitted by both parties that the upper and lower corners on the river of the Maximo Moreno 11-league grant are extant as called for in the original grant to Maximo Moreno, and their corners are not in dispute.

" The defendant read in evidence the depositions of F. W. Johnson, taken in 1878 and 1880, in which he testified that he was principal surveyor for Austin's colony. . . . The first survey made was the Maximo Moreno 11-league survey. This survey was commenced at the point opposite the mouth of the Lampasas River, as called for in the field-notes of the grant, and a line was run thence on the course called for in the grant the distance called for, the chain being used to measure the distance. The northwest or second corner called for in the grant was thus established by him, the distance giving out in the prairie. In running the west line I made an offset to avoid crossing the Leon River, which was about 50 or 60 vrs. wide. This offset was made soon after leaving the beginning corner, there being a peculiar bend in the river at that point. From the northwest corner thus established the second line was run the course and distance called for in the grant. Several streams were crossed on this line at distances not now recollected, and the northeast corner established on two small hackberries in Cow Creek bottom. From the northeast or third corner so established a line was run in the course called for in the grant to San Andres River. This last line was marked but not measured, because it was not usual or necessary to measure the closing line.

" It was admitted by the defendant that the distance as measured on the ground from the northeast corner to a creek

called for in the grant was some four thousand varas more than the distance called for; that is, the distance is 7500 instead of 3500 vrs.; and on cross-examination, being asked to account for the discrepancy, said the distances called on that line were not measured but guessed at. No part of the east line was measured. The exterior lines were marked with blazes. The corner trees and bearing trees, where there were such, were marked with blazes, with two hacks above and two below. In answer to question, on cross-examination, he said that he did not begin the survey at the southeast corner, but he began at the southwest corner, at the three forks at the mouth of the Lampasas, and actually traced the lines in the order set forth in the field-notes. The field-book containing the same, which I kept, I examined, which I don't remember to examine until a month ago, and as hereinbefore stated.

"The plaintiff, in rebuttal to Johnson's testimony, as above set forth, it appearing that said Johnson died in 1884, offered to read in evidence a deposition of said Johnson, taken in 1860; in a certain suit then pending in Bell County, Texas, wherein David Ayers was plaintiff and Lancaster was defendant, in which he stated in answer to question therein propounded that he began the Moreno survey at the southeast corner and ran thence northerly. The north line was then run westwardly, and the third, if run at all, was run southwardly to the river. I am of the opinion that no western line was run, but was left open; but the eastern and northern lines were run and measured. It was not usual to measure the closing line. To the reading of which last-mentioned deposition, proven to be in the handwriting of Johnson, taken in 1860, the defendants objected upon the ground that the deposition had been taken in another and different cause, between other parties, before the institution of this suit; and the same witness having testified in answer to interrogatories and cross-interrogatories propounded herein in 1877 and 1880, respectively, it was not competent as original evidence nor admissible to contradict or impeach the testimony of the witness Johnson, as given in his deposition read by the defendants, notwithstanding the death of Johnson; which objection the court overruled and admitted

the testimony so objected to; to which ruling of the court the defendants then and there excepted and still except, and the same is allowed as exception No. 1."

*Mr. William E. Earle* for plaintiffs in error.

*Mr. W. Hallett Phillips* for defendant in error.

We submit that the deposition of Johnson was properly admitted as evidence to go to the jury with the other evidence in the case, in order to enable them to ascertain the disputed lines of the Moreno survey, which had been run by the party making the deposition.

The precise point was determined in favor of the admissibility of the evidence, by Mr. Justice Field, in delivering the opinion of the Supreme Court of California in the case of *Morton* v. *Folger*, 15 California, 275, 277. See also *Cornwall* v. *Culver*, 16 California, 423. The rule is well settled in Texas that such a deposition is admissible. *George* v. *Thomas*, 16 Texas, 74; *S. C.* 67 Am. Dec. 612; *Stroud* v. *Springfield*, 28 Texas, 649; *Welder* v. *Carroll*, 29 Texas, 317; *Evans* v. *Hunt*, 34 Texas, 111; *Smith* v. *Russell*, 37 Texas, 247; *Hunt* v. *Evans*, 49 Texas, 311; *Coleman* v. *Smith*, 55 Texas, 254; *Tucker* v. *Smith*, 68 Texas, 473.

The record shows that the deposition now in question was taken in a suit wherein David Ayers was plaintiff and Lancaster was defendant. It also shows, by the answer of one of the defendants, that the plaintiff in error, Frank H. Ayers, claims title to the tract in question through David Ayers.

The deposition, it thus appears, was taken in a suit in which the present plaintiff in error, Frank H. Ayers, was in privity with the plaintiff in that action, David Ayers.

Under the rule stated in the cases relied on by plaintiff in error, the deposition was admissible in the present suit. The answer of Anderson containing the statement of the derivation of title, was filed in order to compel his landlord and warrantor, Frank H. Ayers, to come in and defend the title. This Ayers accordingly did and set up title to the land in con-

troversy. Hall, another tenant of Ayers, was also a party defendant. He filed no answer and judgment went against him, as of course. He is, however, joined in the writ of error.

The privity being established, it is not necessary that the parties in the two suits should be identical. *Phil., Wilm. & Balt. Railroad* v. *Howard*, 13 How. 307.

The depositions of Johnson, made as far back as 1880, at a former trial of the present case, were admitted by the court at the instance of the plaintiff in error. The deposition which he made on the same subject matter in the previous suit, and offered by defendant in error, we submit, was equally admissible.

But what does the deposition objected to contain, and what bearing did it have on the determination of the case? That is the real inquiry.

If the subject matter of the deposition became wholly immaterial in the progress of the cause, its admission cannot support an assignment of error, even if it had been erroneous. The plaintiff in error recognizes this fact, and endeavors to meet it. He says that "the erroneous admission of this evidence led the court below into a string of errors." But when he comes to point out any particular error it will be seen to consist in that portion of the charge of the court which he specifies, as follows: "If, however, in your judgment, the proof in this case is not sufficient to enable you to fix the point where said two hackberries called for in the field notes of the original surveyor stood, and the proof does not satisfy you that the west and north lines were actually run and measured by the original surveyor, you may fix the north line of this grant in either of these two ways, adopting that one of these two ways which, in your judgment, from the proof will so fix said north line as will most nearly harmonize all the calls of the grant with the corners and lines that are established, namely: You may begin at the S. W. corner on the river and find the northwest corner by the course and distance of the first line, and extend the second line for the north or back line so as to intersect the east line (a line run N. 20° E. from the S. E. corner on the river, or you may begin at the S.

E. corner on the river and follow thence the east line N. 20° E.
the distance called for in the field-notes for said line 26,400
varas), *and as much farther as the proof satisfies you that. said
line was actually marked on the ground by the original surveyor
and at a point beyond which the proof fails to show to your
satisfaction that this line was marked by Johnson.* You may
fix the N. E. corner and thence extend the line N. 70° W. to
the west line of said grant as the north or back line of said
grant, and if the north or back line as fixed by you does not
cut the Daws survey you will find for the plaintiff ; if it does
cut said survey you will find for the defendant."

The court had, in a previous portion of the charge, directed
the jury as follows ; no exception was taken to such part of the
charge : "In order to reconcile or elucidate the calls of a sur-
vey in seeking to trace and fix the lines upon the ground, you
are not required to begin at the corner called for in the grant
as the 'beginning' corner. The corner so named as the begin-
ning corner does not control more than any other corner
actually well ascertained and established, nor are you con-
strained to follow the calls of the grant in the order that said
calls stand recorded in the field-notes, but you may reverse the
calls and trace the lines the other way, and should do so if
from your view of the proof to so reverse the calls will aid
you to so fix the boundaries of the Maximo Moreno grant as
will most nearly harmonize all the calls in the grant with the
corners and lines that are established, and with the object of
the grant."

This portion of the charge, it must be admitted, stated cor-
rectly a general rule of law applicable to the case.

The whole deposition of Johnson, objected to, is as follows :
"That he began the Moreno survey at the southeast corner
and ran thence northerly. The north line was then run west-
wardly, and the third, if run at all, was run southwardly to
the river. I am of the opinion that no western line was
run at all, but was left open ; but the eastern and
northern line were run and measured. It was not usual to
measure the closing line."

Nothing said in this deposition, we submit, had any effect

upon anything material said by the court in any portion of the charge excepted to, nor did its admission in any way harm the plaintiff in error. Whether the east line was or was not the first line run, was immaterial, nor as the court charged were the jury obliged to begin at the corner called for in the grant as the "beginning corner."

The questions arising under the conflict of evidence as to the true location of the northern line of the Moreno survey were properly left to the jury, and the deposition of Johnson did not affect these questions nor add anything to the evidence regarding them.

The points touched in the deposition were not those upon which the case went off, and we submit that its admission neither affected what the court charged nor what it refused to charge.

MR. JUSTICE MILLER, after stating the case as above reported, delivered the opinion of the court.

A very earnest and able argument is presented to us to sustain this ruling, upon the general ground of the liberality of courts in admitting what would be otherwise called hearsay evidence in regard to boundaries, such as tradition, general understanding in the neighborhood, declarations of persons familiar with the boundaries and with the objects on the lines of the survey, and others of similar character. An opinion of Mr. Justice Field, delivered in the Supreme Court of California in 1860, in the case of *Morton* v. *Folger*, 15 California, 275, is much relied on in this case, and it is also said that the courts of the State of Texas have established the same principle, which has thus become a rule of property in that State, which should be followed in this case. If the principle stated in the decision of the California court, and in the decisions of the Supreme Court of the State of Texas, were indeed applicable to the case before us, we would hesitate very much in reversing the judgment on this ground, and, indeed, should be inclined, on the weight of those authorities, and in the belief that in the main they are sound, to overrule the exception. But

the objection in the present case to the deposition of Johnson, taken in 1860, does not rest upon the ground that it is hearsay testimony, or that it does not come within the general principle which admits declarations of persons made during their lifetime of matters important to the location of surveys and objects showing the line of those surveys. Johnson's deposition of 1860, if it stood alone and was introduced upon the trial of this case for the first time as independent testimony in favor of plaintiffs, might be admissible. It is not necessary to decide that question, because such is not the character of the circumstances under which the testimony was admitted. As we have already said, there had been three trials of this action, during which Johnson was alive and was a competent witness for either party. All his testimony was given by way of deposition. This only renders the manner of taking it more deliberate, and if it was to be contradicted by anything he had said on former occasions, made it the more easy and reasonable that plaintiff should have called his attention to the former statements which they proposed to use. It will be observed that the plaintiffs did not introduce, or offer to introduce, this deposition of Johnson of 1860 as a part of their case, when it was their duty to introduce their testimony. They, therefore, did not rely on it as independent testimony in their favor. But after Johnson's deposition had been given in the case itself, and he had been cross-examined by the plaintiffs in that deposition in regard to his testimony, and after he was dead and could give no explanation of his previous testimony of 1860, which might show a mistake in that deposition, or give some satisfactory account of it consistent with his testimony in the principal case, this old deposition is for the first time brought forward to contradict the most important part of his testimony given on the present trial. The importance of this matter as it was presented to the jury will be readily understood when we revert to the fact that the two southern corners of the survey are established without question and are found on the San Andres River, and the controversy concerns the question whether the east line and the west line of that survey, which are straight lines almost due north, extend so far north that

the northern line between these lines is so far north as to include the survey of Daws under which plaintiff claims. In the principal deposition of Johnson, as we have seen by the bill of exceptions, he states that this survey commenced at the southwestern corner on the San Andres River and was run northward the distance called for in the grant, and actually measured by the chain. The northwest or second corner called for in the grant was established by him, the distance giving out in the prairie. From the northwest corner thus established, the second, the line was run for the course and distance called for in the grant, and the northeast corner established on two small hackberries on Cow Creek bottom. From the northeast or third corner thus established, the course was run to the San Andres River. This last line was marked but not measured, because it was not necessary to measure the closing line. In answer to questions on cross-examination, he said he did not begin at the southeast corner but he began at the southwest corner, and actually traced the lines in the order set forth in the field-notes. He said the field-book containing these notes " I kept and examined, which I do not remember to have examined till a month ago, as hereinbefore stated." The deposition offered by plaintiff states distinctly that he began the Moreno survey at the southeast corner, and ran thence northerly. The north line was then run westwardly, and the third, if run at all, was run southward to the river. And he further says: " I am of the opinion that no western line was run but was left open, but the eastern and northern lines were run and measured. It was not usual to measure the closing line." It was admitted that the distance as measured on the ground from the northeast corner to a creek called for in the grant was some four thousand varas more than the distance called for, and the witness on cross-examinations in the principal depositions read by the defendant in this case, being asked to account for this discrepancy, said: " The distances called on that line were not measured but guessed at. No part of the east line was measured." The discrepancy between these two depositions is manifest, and that discrepancy is in a matter which relates directly to the question whether the Moreno grant as it

was surveyed included the land embraced within the Daws grant, under which plaintiff asserts claim. · If the jury believed in the truth of the depositions of Johnson taken by the defendant in this case, at which he was cross-examined by the plaintiff, it affords the strongest evidence that the Daws claim was included in the lines of the Moreno survey. This deposition is supported by the field-notes and by the reference of Johnson himself to those field-notes a very little while before he gave his deposition. If, on the contrary, the eastern line was the one which was actually run and measured, beginning at the southeast corner of the survey on the San Andres River, then the fact that that line was actually run and measured would probably have a very great influence in the mind of the jury on the question in issue. And whether this was so or not, the contradictory statements of Johnson under oath might destroy the value of his testimony before the jury.

The circumstances under which the former statements of a witness in regard to the subject matter of his testimony when examined in the principal case can be introduced to contradict or impeach his testimony, are well settled, and are the same whether his testimony in the principal case is given orally in court before the jury or is taken by deposition afterwards read to them. In all such cases, even where the matter occurs on the spur of the moment in a trial before a jury, and where the objectionable testimony may then come for the first time to the knowledge of the opposite party, it is the rule that before those former declarations can be used to impeach or contradict the witness, his attention must be called to what may be brought forward for that purpose, and this must be done with great particularity as to time and place and circumstances, so that he can deny it, or make any explanation, intended to reconcile what he formerly said with what he is now testifying. While the courts have been somewhat liberal in giving the opposing party an opportunity to present to the witness the matter in which they propose to contradict him, even going so far as to permit him to be recalled and cross-examined on that subject after he has left the stand, it is believed that in no case has any court deliberately held that after the witness's

testimony has been taken, committed to writing and used in the court, and by his death he is placed beyond the reach of any power of explanation, then in another trial such contradictory declarations, whether by deposition or otherwise, can be used to impeach his testimony. Least of all would this seem to be admissible in the present case, where three trials had been had before a jury, in each of which the same testimony of the witness Johnson had been introduced and relied on, and in each of which he had been cross-examined, and no reference made to his former deposition nor any attempt to call his attention to it. This principle of the rule of evidence is so well understood that authorities are not necessary to be cited. It is so well stated, with its qualifications and the reasons for it, by Mr. Greenleaf in his work on Evidence, vol. 1, in §§ 462 and 464 inclusive, that nothing need be added to it here except a reference to the decisions cited in his notes to those sections. See also *Weir* v. *McGee*, 25 Texas, Supplement, 20, 32.

It will thus be seen that the principle on which counsel for plaintiff in error objected to this deposition of Johnson is not in conflict with the case of *Morton* v. *Folger*, in 15 California, 275, nor with any case to which we are cited, decided by the Supreme Court of Texas. That ground, as stated in the bill of exceptions, is "that the deposition had been taken in another and different cause, between other parties, before the institution of this suit; and the same witness having testified in answer to interrogatories and cross-interrogatories propounded herein in 1877 and 1880, respectively, it was not competent as original evidence, nor admissible to contradict or impeach the testimony of the witness Johnson, as given in his deposition read by the defendant, notwithstanding the death of Johnson."

We are very clear that the deposition of 1860 was improperly admitted, and its important relation to the issue tried by the jury was such that the judgment rendered on it must be reversed, and the verdict set aside and a new trial granted. There are other assignments of error, the consideration of which is not necessary in the decision of the case before us,

which, with due attentio 1 to what we decided when the case was here before, to wh.ch we still adhere, may not arise in another trial.

*Reversed.*