## GORDON v. THOMAS.

### No. 5943.

Court of Appeals of the District of Columbia.

April 2, 1934.

Roger J. Whiteford and P. H. Marshall, both of Washington, D. C., for appellant.

Harry F. Kennedy and H. Mason Welch, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

The appellant, Fulton R. Gordon, together with one Brown, was defendant below in an action for damages for alleged conspiracy and abuse of criminal process brought by Thomas, the appellee here.

A nonsuit was taken as to Brown, and a verdict rendered against Gordon for $10,000 for abuse of process as charged in one count of the declaration.

Judgment was entered on this verdict, and this appeal followed.

The action grew out of the arrest of plaintiff below on a warrant sworn out by Brown on April 8, 1929, charging Thomas with larceny after trust, which warrant was the next day dismissed by the United States attorney's office.

Thomas was an attorney, and the alleged larceny was said to have occurred while Brown was his client.

The theory of the case against Gordon is that he maliciously incited Brown to procure the warrant for Thomas; that he participated in making the arrest and in use of criminal process to extort from Thomas money claimed by Brown. And Gordon's alleged malice against Thomas was said to result from Thomas' representation of Mrs. Gordon in an earlier matrimonial cause.

Four assignments of error appear in the record, but, in view of the conclusion we have reached in the case, we discuss only the second, based on a ruling on the evidence.

The defendant's office manager, one Sweeney, was produced as a witness by the plaintiff, and testified that he recalled that disbarment charges had been filed against the

plaintiff by the grievance committee of the bar association; that he did not recall the day thereof, nor that he was in the courthouse on that day; but that he had never seen a copy of the charges, and did not know what they were.

Thereupon the plaintiff called one Baker, a newspaper reporter, who testified, over objection, to a conversation with Sweeney at the door of the pressroom in the courthouse on the day those charges were filed; that Sweeney then told Baker he had a story for him, and asked if he knew plaintiff; being answered in the negative, Sweeney then reminded Baker that plaintiff was the lawyer who had recently filed a divorce suit against Gordon, Sweeney saying "we are disbarring him," and showed Baker a copy of what purported to be a grievance committee petition for disbarment of Thomas.

Neither the disbarment proceeding nor any connection of Gordon therewith was mentioned in the declaration, and the only materiality claimed for this testimony was that it showed malice attributable to Gordon through Sweeney as his agent.

Baker's testimony was duly objected to on the ground that no evidence had been offered connecting Gordon therewith, and the principal, if not the only, evidence of Sweeney's agency was his own testimony that he was office manager for Gordon, and that after the divorce suit was filed he made an investigation by direction of Gordon of some statements or complaints about Thomas which were voluntarily brought into Gordon's office.

Neither Sweeney, Baker, nor any other witness testified that Gordon directed, authorized, ratified, or was aware of the interview between Sweeney and Baker, either specifically or by virtue of the roving commission which the plaintiff contended that Sweeney had from Gordon. And, of course, such interviews and statements cannot fall within the scope of employment of the manager of a real estate office.

 "It cannot be too often pointed out that the mere fact that one employs others to work for him does not make him chargeable with what they may say about him or his affairs while in his employ. If he employs them to talk for him, a different case may be presented." Standard Oil Co. v. Linol Co., 75 N. J. Law, 294, 68 A. 174, 175.

 Admission of this testimony of Mr. Baker was error as assigned but consideration of the results thereof suggests a further ground for its exclusion, which, though unassigned, is so related to the question of prejudice as to require consideration here. Section 5, rule 8, Court of Appeals; Little Miami & C. & X. Railroad Co. v. United States, 108 U. S. 277, 2 S. Ct. 627, 27 L. Ed. 724; Mills v. Scott, 99 U. S. 25, 25 L. Ed. 294; Washington & G. Railroad Co. v. Car Company, 5 App. D. C. 550; McReynolds v. Roberts Co., 52 App. D. C. 49, 281 F. 286.

 Mr. Sweeney was called as plaintiff's witness, and, while the record does not give his question and answers, it narrates, as we have previously mentioned, that he "recalls the fact that charges were filed by the grievance committee against Thomas; does not recall being in the courthouse that day; had been in the pressroom at the courthouse; but never had a copy of the disbarment charges."

With that as a foundation, the plaintiff proceeded to impeach Sweeney by Baker's testimony, whatever other purpose that testimony may have had.

But that foundation for impeachment does not satisfy the controlling rule of evidence which indispensably requires that, before a witness may be impeached by proof of contrary verbal statements elsewhere made, his attention must be specifically called to the time, place, person, and circumstances involved in such statements. Conrad v. Griffey, 16 How. 38, 14 L. Ed. 835; The Charles Morgan, 115 U. S. 77, 5 S. Ct. 1172, 29 L. Ed. 316; Ayers v. Watson, 132 U. S. 405, 10 S. Ct. 116, 33 L. Ed. 378; Chicago, M. & St. P. Railroad Co. v. Artery, 137 U. S. 519, 11 S. Ct. 129, 34 L. Ed. 747; Gordon v. U. S., 53 App. D. C. 154, 289 F. 552; Greenleaf on Evidence, vol. 1, § 462.

The plaintiff having called Sweeney as his witness owed him the protection of the rule, and, if it had been given him, it may well be that Baker's testimony would not have been offered or received. But the episode as it occurred enabled the jury to attribute to Gordon, without proper proof, not only the supposed malice of Sweeney, but also his supposed perjury.

And the verdict itself, which was specified by the jury to consist of $100 actual damages and $9,900 punitive damages, is not without indication that some inflamed prejudice against Gordon entered into its arithmetic. For the reasons given, the judgment is reversed, and the case remanded for a new trial.

Reversed.