## DEMASI v. WHITNEY TRUST. & SAVINGS BANK. *

### No. 16646.

Court of Appeal of Louisiana. Orleans.

Nov. 2, 1937.

*Rehearing denied Nov. 29, 1937.

Jacob H. Morrison and de Lesseps S. Morrison, both of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellee.

McCALEB, Judge.

On September 22, 1932, the plaintiff, Cosimo Demasi, brought this suit against the Whitney Trust & Savings Bank (subsequently Whitney National Bank), claiming, in substance, that, on September 23, 1929, his wife opened a savings account with the defendant under the name of "Mrs. Tony Marino"; that the defendant issued to her its passbook, No. 3481, evidencing said account, and that she made a total deposit in said account of the sum of $650, which, together with accrued interest thereon, amounted to the sum of $699.31 at the time the suit was brought. It was further alleged that the deposits made by plaintiff's wife belonged to the community of acquets and gains existing between them; that the sum of $699.31 still remained on deposit to the credit of plaintiff's wife; and that he and his wife had attempted to withdraw said funds but the defendant bank refused, and still refuses, to release them. Judgment was prayed for the amount of the deposit, with legal interest from judicial demand.

The defendant answered and admitted that a savings account had been opened with it in the name of "Mrs. Tony Marino," and that the deposits, together with interest on said account, amounted to $699.31 (the sum for which the plaintiff sues). It also admitted that it had declined to allow plaintiff or his wife to make withdrawals against this account for the reason that the funds did not belong to them.

For further answer, defendant alleged that, on September 23, 1929, two ladies, who were then unknown to it, presented themselves at the St. Roch Market Branch of the bank and expressed a desire to open a savings account; that one of these ladies declared her name to be Mrs. Tony Marino and asked that the account be opened in that name, which was accordingly done; and that shortly thereafter, to wit, on September 27, 1929, these same two ladies again presented themselves and made another deposit which, together with the initial deposit, amounted to a total sum of $650. It further averred that, on May 4, 1932, one of these ladies called at the bank and requested withdrawal of $100 against the account standing in the name of "Mrs. Tony Marino," and, upon presenting the bank book and giving the password agreed upon, it paid to this lady $100 and entered said withdrawal in the original bank book issued in the name of Mrs. Tony Marino. It further alleged that, on May 31, 1932, the same lady again presented herself at the bank and informed it that her original pass book had been lost and requested the withdrawal of an additional $100 from the account, and that said withdrawal was permitted upon said lady giving the password agreed upon at the time the account was originally opened. It further sets forth that, on June 6, 1932, this lady again returned to the bank and declared that she was unable to find the original bank book and that she executed, upon its request, a signed statement of said fact, whereupon a duplicate book was issued and a further withdrawal of $100 was permitted. Subsequently, it is alleged, this lady returned to the bank and made various withdrawals against said account from June 10, 1932, through July 23, 1932, amounting in total to $341.31, and that there now remains a balance in the hands of the bank of $70.17 which it is alleged cannot be paid because there are conflicting claims as to which of the two ladies is entitled to the deposit.

The defendant further averred that, since the happening of the events above set forth, it has discovered that the two ladies who presented themselves at the bank were Mrs. Cosimo Demasi and her daughter, Mrs. Carrie Arena; that the withdrawals were made to the proper person in accordance with the bank's rules and regulations; and that it is not liable to the plaintiff for paying out said money. Alternatively, it alleges that, in the event the court should hold that the withdrawals were not made by the person making the

deposit, it is, nevertheless, not liable because they were made by Mrs. Arena with the full knowledge, consent, and approval of Mrs. Demasi.

On the foregoing issues, evidence was heard which resulted in a judgment for the defendant bank. From that judgment, plaintiff prosecuted an appeal to this court. Shortly after the appeal had been lodged here, the defendant moved to dismiss it on the ground that, after the judgment was granted in favor of defendant, plaintiff's wife had acquiesced therein, as evidenced by her acknowledgment by notarial act executed on March 6, 1935 (some time after the trial below), wherein Mrs. Demasi stated that she had made withdrawals against the savings account in the defendant bank amounting to $634.31, "all of which said withdrawals affiant acknowledges to have been made from said account by her or with her full knowledge, consent and approval. * * *"

The motion to dismiss the appeal was submitted and, on June 10, 1935, we held, by per curiam, that it was not advisable to dismiss the appeal in view of the fact that Mrs. Demasi had testified as a witness in the case when it was tried below and had stated that she had not withdrawn any of the funds on deposit to her credit. We further ruled that, if there was any new evidence or if, in fact, there was any evidence which we thought should be again considered by the district court, we would, when the matter was presented on its merits, consider the question as to whether the whole case should be remanded for further hearing. Thereafter, on the merits of the case, we decided that the matter should be remanded for further proceedings, in view of the affidavit presented against Mrs. Demasi which tended to contradict and impeach the testimony previously given by her at the trial. See (La.App.) 161 So. 789. Before the case could be set down for trial on the second hearing in the district court, Mrs. Demasi died. At the time of hearing, the affidavit above referred to was introduced in evidence against the plaintiff, over the objection of his counsel. After considering this additional evidence, together with the evidence produced on the first trial, the district judge again found in favor of the defendant bank and dismissed plaintiff's suit. From this judgment, the plaintiff has prosecuted the present appeal.

▪▪▪ Plaintiff's cause of action is for the return of a deposit. Accordingly, the burden was upon him, to show, by a preponderance of evidence, (1) that Mrs. Demasi was the person making the deposit with the bank in the name of Mrs. Tony Marino and (2) that the money was not withdrawn by her. If the plaintiff successfully established the foregoing facts, the burden shifted to the defendant bank, in order to excuse itself from liability, to prove that it was free from fault (in permitting the withdrawal of the deposit by some one other than plaintiff's wife), under the provisions of article 2937 of the Revised Civil Code, which declares: "The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."

Since the bank denies that Mrs. Demasi was the depositor of the funds in suit, it becomes necessary to examine the testimony given at the first trial, relating to this point.

The plaintiff and his wife are Italians. They operated a grocery store in the city of New Orleans. Mrs. Demasi could not read or write, and, while she understood the English language, she was unable to speak it. On September 23, 1929, Mrs. Demasi, accompanied by her daughter, Mrs. Arena, repaired to the St. Roch Market Branch of the Whitney Bank for the purpose of opening a savings account. Under the rules and regulations of the bank, where a person who cannot read or write desires to open a savings account, it is necessary that such person affix his mark to a card identifying the account, which mark, in this instance, was witnessed by Mr. Mims, the teller of the bank. The account was opened in a fictitious name, viz., "Mrs. Tony Marino." Mrs. Demasi stated that her reason for using a fictitious name was because she did not want her daughter, Mrs. Arena, to obtain any of the funds. Mrs. Arena says that the name "Mrs. Tony Marino" was used because she and her mother did not want her father, the plaintiff, to know of the existence of the account. However, plaintiff testified that he kept a savings account with the defendant bank under the name of "Tony Marino." We note also that it is intimated, in the evidence adduced, that the plaintiff and his wife were illegally selling intoxicating liquor as an adjunct to their grocery store business and it seems reasonable to believe that the underlying pur-

pose for opening this account in a fictitious name was to conceal the fact that they had funds in the bank, in case of arrest for violation of the now extinct Prohibition Act.

Mrs. Demasi testified that she made her cross-mark upon the card required by the bank, and that the teller gave her the password "Tony" which was to be used by her in the event she desired to make withdrawals of the funds.

On the other hand, Mrs. Arena, the plaintiff's daughter, stated that the funds deposited were jointly owned by her mother and herself and that they had obtained the same through sales of liquor made at the grocery store operated by plaintiff and his wife. She further says that the account was considered as joint between her mother and herself and that the teller of the bank gave the password "Tony" to both of them. Mrs. Arena admits, however, that she could read and write, but says the reason why the account was not opened in her name or in the name of both her mother and herself was because of the fact that her mother could not read or write and that they agreed that either one should make withdrawals from the account whenever they desired to do so.

Mr. Mims, the teller of the bank, who handled the opening of the account, testified that he remembers two ladies coming into the bank but he is unable to say which one was given the password. He admits that this password was spoken by him to one of the ladies in the presence of the other.

In view of Mr. Mims' testimony, we are of the opinion that he, as agent for the bank, was guilty of negligence with respect to the manner in which the account was opened. It seems plain that, where a savings bank accepts deposits from persons who are unable to read or write and puts in use a password to be given by the party making the deposit, so that withdrawals can be made, it is highly necessary for it to be certain that this password is kept a secret. Mr. Mims admits that the password was spoken to either Mrs. Demasi in the presence of her daughter or vice versa. Accordingly, the daughter could have withdrawn funds on deposit by giving the password without the knowledge or consent of her mother, and it was negligence for the bank to permit this condition to exist. Moreover, we think that the bank, in case it accepts deposits from persons who are unable to read or write (and where it elects to use a password), should also obtain a description of the person owning the account in order to protect that person and itself from fraudulent withdrawals being made by others. If such a practice had been required in the instant case, this cause of action could have never arisen because the bank would have had an adequate description of Mrs. Demasi, who was a much older woman than her daughter.

For reasons which we shall hereinafter point out, we accept the testimony of Mrs. Demasi against that of her daughter, to the effect that she, (Mrs. Demasi) was the owner of the funds deposited and that she actually deposited the same with the defendant bank. We further hold that the bank was negligent in its handling of the opening of this account and that it was its duty to make certain, by description or otherwise, that the money deposited with it could not be withdrawn by any person other than the one making the deposit.

Being of the view that Mrs. Demasi was the depositor of the defendant bank and also being convinced that these funds belonged to the community of acquets and gains, existing between the plaintiff and herself, and that the bank was negligent in paying these funds to any one other than Mrs. Demasi, we next consider the question as to whether she authorized or consented to the withdrawals made by her daughter, Mrs. Arena. This question involves the determination of the credibility of the statement made by Mrs. Demasi as opposed to the testimony of her daughter, Mrs. Arena.

Mrs. Demasi testified, in substance, that the money deposited by her represented years of savings derived from the business conducted by her husband and herself, and that, at no time, did she authorize, consent, or empower her daughter to withdraw the deposit or any portion thereof.

Contra, the daughter states that the money deposited belonged jointly to her mother and herself, and that it was understood between them that either one could withdraw the funds at any time they desired.

Because of the irreconcilable conflict between the testimony of mother and daughter, it is well to examine the physical facts

of the case, which show the circumstances under which the funds were withdrawn from the bank. These deposits were made by the mother in the month of September, 1929. No withdrawals were made from the account until nearly three years later, on May 4, 1932, when the sum of $100 was turned over to the daughter by the bank. The fact that the withdrawals did not begin until approximately three years after the deposit was made would seem to corroborate the testimony of the mother that the money deposited represented her life savings and that she did not intend that any of the funds should be withdrawn. The 3 per cent. interest, which the bank paid on savings accounts, was entered at regular six-month intervals, and the first withdrawal was made at a time when the daughter is supposed to have taken the passbook to the bank for the purpose of having the interest entered therein. Subsequent to the occasion of the first withdrawal, the daughter again visited the bank on May 31, 1932, and informed it that the original passbook, evidencing the deposit, had been lost or mislaid and that she desired to make an additional withdrawal of $100. This withdrawal was permitted by the bank upon the giving of the password by the daughter. Later, on June 6, 1932, the daughter again appeared at the bank and obtained an additional withdrawal of $100. On that occasion, the bank had her sign an affidavit stating that the original passbook had been lost and a duplicate passbook was issued to her. Thereafter, during a short space of time, dating from June 10, 1932, through July 23, 1932, the daughter made various withdrawals amounting to the sum of $341.31, and the balance left in the account, after these withdrawals, amounted to only $70.-17.

It is shown by the testimony of Mrs. Demasi that the passbook, evidencing the account in the bank, was always kept by her in a trunk at her residence. She says that this book was neither lost nor mislaid, and the plaintiff produced and filed it in evidence on the original trial of the case. It is further shown, by the testimony of the plaintiff, that his relationship with his daughter had been strained for some time and he ascribes, as the reason therefor, that she was constantly stealing from the grocery store at the time she resided with her parents, which was before her marriage. He further says that, when his daughter's baby was born,

he opened a savings account in the child's name and that his daughter unsuccessfully attempted to withdraw the funds from that account. It is also shown that, shortly after Mrs. Arena withdrew the funds from the bank, she purchased an automobile and took a pleasure trip to Florida.

The testimony of the daughter does not seem plausible to us when viewed in the light of the physical facts of the case. We feel certain that Mrs. Demasi had invested her life savings with the defendant bank and that her daughter, without her knowledge and consent, obtained the funds deposited, under false pretenses and misrepresentations. We further hold that the result accomplished was made possible by the initial fault and negligence of the bank in not obtaining an accurate description of the owner of the funds (Mrs. Demasi) and by giving the password to the mother in the presence of her daughter. We are therefore convinced that the ruling of the district judge in favor of the bank, upon the evidence considered on the first trial of this case, is manifestly erroneous.

But it is contended by counsel for the bank that the testimony of Mrs. Demasi is not entitled to weight and should not be accepted because she, on March 6, 1935, some time after the case was first tried below, executed a notarial acknowledgment wherein she stated that all of the withdrawals from the savings account were made by her or with her full knowledge, consent, and approval. It was because of the damaging effect of this affidavit, executed when the matter was pending here on appeal, that the case was remanded by us to the district court for further hearing.

As we have above stated, Mrs. Demasi died before the cause could be heard on the remand. Notwithstanding her death, counsel for the bank were, nevertheless, successful in having the affidavit received in evidence, at the second hearing, over the objection of the plaintiff that it was hearsay and consequently inadmissible.

 Counsel for the plaintiff postulates that the district judge erred in receiving the affidavit for the reason that the statement tends to impeach the veracity of Mrs. Demasi's former testimony, and that she would have been entitled, if alive, to be confronted with it and offer an explanation as to the reason why it was signed. Many decisions, including

precedents of the Supreme Court of the United States, are cited to fortify the argument against the admissibility of the affidavit. These authorities reveal that it is an established rule of evidence that, in case the testimony of a witness is sought to be ·impeached by the use of a prior or subsequent statement made by him, which portends to controvert or contradict his evidence made under oath on the trial of the case, the witness is entitled to be first confronted with the impeaching statement in order that he may explain its contents. And the fact that the witness is dead does not dispense with the application of the rule or affect the principle involved because common justice requires that, by first calling a witness's attention to the subject, he should have an opportunity to recollect the facts and, if necessary, to correct the statement already given, as well as, by a re-examination, to explain the nature, circumstances, meaning, and design of what he is proved elsewhere to have said. See Greenleaf on Evidence, vol. 1, p. 639. The Supreme Court of the United States, in considering this question, in Ayers v. Watson, 132 U.S. 394, on page 404, 10 S.Ct. 116, 118, 33 L.Ed. 378, observes:

"The circumstances under which the former statements of a witness in regard to the subject-matter of his testimony when examined in the principal case can be introduced to contradict or impeach his testimony, are well settled, and are the same whether his testimony in the principal case is given orally in court before the jury, or is taken by deposition afterwards read to them. In all such cases, even, where the matter occurs on the spur of the moment in a trial before a jury, and where the objectionable testimony may then come for the first time to the knowledge of the opposite party, it is the rule that, before those former declarations can be used to impeach or contradict the witness, his attention must be called to what may be brought forward for that purpose, and this must be done with great particularity as to time and place and circumstances, so that he can deny it, or make any explanation intending to reconcile what he formerly said with what he is now testifying. While the courts have been somewhat liberal in giving the opposing party an opportunity to present to the witness the matter in which they propose to contradict him, even going so far as to permit him to be recalled and cross-examined

on that subject after he has left the stand, it is believed that in no case has any court deliberately held that after the witness's testimony has been taken, committed to writing, and used in the court, and by his death he is placed beyond the reach of any power of explanation, then in another trial such contradictory declarations, whether by deposition or otherwise, can be used to impeach his testimony. Least of all would this seem to be admissible in the present case, where three trials had been had before a jury, in each of which the same testimony of the witness Johnson had been introduced and relied on, and in each of which he had been cross-examined and no reference made to his former deposition, nor any attempt to call his attention to it. This principle of the rule of evidence is so well understood that authorities are not necessary to be cited, It is so well stated, with its qualifications and the reasons for it, by Mr. Greenleaf in his work on Evidence, (volume 1, §§ 462–464, inclusive,) that nothing need be added to it here except a reference to the decisions cited in his notes to those sections. See, also, Weir v. McGee, 25 Tex.Supp. [20] 32."

But counsel for the defendant bank suggest that this rule has application only in cases where the declaration is made prior to the time when the witness is placed on the stand for examination. They point out that in this case Mrs. Demasi had already testified and the affidavit (which is now said to destroy the effect of her testimony) was made subsequent to the time the case was tried and that it is therefore admissible, even though she is unable to be confronted with it by reason of her death. This argument is opposed by the great weight of authority. In the case of Baker v. Sands, 140 S.W. 520, 521, decided by the Court of Civil Appeals of Texas, is found a matter which is on all fours with the question now under consideration. There, a witness had testified as to the amount of cotton involved in the suit upon trial of the case. Subsequent thereto, this same witness made an ex parte affidavit in which he admitted that all of his testimony, given at the former trial, was false and that he wished to retract it. When the matter was retried, the affidavit was sought to be introduced. In holding the affidavit inadmissible, the court said:

"Appellee, however, contends that, where a witness is dead at the time the testimony is reproduced, or is beyond the jurisdiction

of the court (which is treated in law as equivalent thereto), it is impossible to lay such predicate; and therefore, in the interest of justice, the opposite side should have the right to show such contradictory statements, without the necessity of laying such predicate, and that in the present case the court did not err in allowing the introduction of the ex parte affidavit, in the absence of such predicate.

"While there is some conflict in the decisions, the great weight of authority, both in this country and in England, seems to be in support of the view that such contradictory statements are not admissible, unless the proper predicate is laid therefor, and that the death of the witness, or his absence from the jurisdiction of the court, furnishes no exception to the rule. See volume 30, p. 1125, Ency. Law (2d Ed.); Wigmore on Evid. vol. 2, sec. 1030 et seq.; Ency.Evid. vol. 7, p. 101; Mattox v. United States, 156 U.S. [237] 242-245, 15 S.Ct. 337, 39 L.Ed. 409; Conrad v. Griffey, 16 How.(57 U.S.) 38, 14 L.Ed. 835; Stacy v. Graham, 14 N.Y. 492-499; Runyan v. Price, 15 Ohio St. 1, 86 Am.Dec. 459; Wroe v. State, 20 Ohio St. 460–472; Griffith v. State, 37 Ark. 324; Unis v. Charlton, 12 Grat. (Va.) 484; Kimball v. Davis, 19 Wend. (N.Y.) 437; Brown v. Kimball, 25 Wend. (N.Y.) 259; 6 Current Law, 2003; Lerum v. Geving, 97 Minn. 269, 105 N.W. 967; Omaha St. Ry. Co. v. Boesen, 74 Neb. 764, 105 N.W. 303, 4 L.R.A.(N.S.) 122; People v. Witty, 138 Cal. 576, 72 P. 177; People v. Compton, 132 Cal. 484, 64 P. 849; Ency. Plead. & Prac. vol. 10, p. 287; 2 Current Law, p. 2191. See Amer. Dig. (Decennial Edition) [Witnesses] vol. 20, § 380(3), p. 2176; Stewart v. State (Tex.Cr.App.) 26 S.W. 203."

We rule that the affidavit of Mrs. Demasi was inadmissible for the purpose of impeaching her testimony given at the first hearing of the case.

 Counsel for the defendant bank, nevertheless, contend that this affidavit is admissible on two other separate and distinct grounds: (1) That it is an authentic act complying with the provisions of article 2234 of the Rev.Civil Code; and (2) that it is a declaration against the interest of Mrs. Demasi. We shall consider these grounds separately.

With respect to the first ground, that the document is an authentic act, the argument seems to be that it, having been executed before a notary and three witnesses, is entitled to be admitted in evidence under article 2236 of the Code, because that article provides that "the authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery."

Article 2234 of the Code defines an authentic act as follows: "The authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in presence of two witnesses, aged at least fourteen years, or of three witnesses, if a party be blind."

It will be noted from the foregoing that the definition of the authentic act specifically relates to contracts and it can hardly be said, in the case at bar, that the affidavit of Mrs. Demasi had any relation to a contract. As a matter of fact, it was made for the purpose of obtaining $70.17 still remaining in the bank, to which she was entitled as a matter of right and there was no consideration flowing to her in executing this affidavit. The provisions of articles 2234 and 2236 of the Code, defining an authentic act and making the act full proof of the agreement contained in it, and providing further that it relates to contracts, plainly evidence an intention on the part of the lawmakers to prevent the introduction of parol evidence in cases where parties have executed agreements in this form (excepting cases of forgery). It was never intended that these articles should apply to ex parte statements or affidavits of persons not entering into contracts. This is evident from the wording of article 2237, which provides: "The acknowledgment of payment, *made in an authentic act,* cannot be contested, under pretense of the exception of non numerata pecunia, which is hereby abolished." (Italics ours.)

It will be seen that this article refers to the acknowledgment of payment *made in an authentic act* and has no reference to an acknowledgment or a receipt made in the *form* of an authentic act.

 Furthermore, even though it be conceded that an affidavit acknowledging payment constitutes full proof, if made in the form of an authentic act, the document relied upon by the defendant bank falls far short of being written in the form required by article 2234 of the Code. The writing is an affidavit, which is sworn to before a notary public and attested by three

witnesses, but there is nothing stated on the face of the act to show that it was signed in the presence of the three witnesses. In Colonial Trust Co. v. St. John Lumber Co., 138 La. 1033, 71 So. 147, 148, the Supreme Court, in speaking of the authentic act, remarked: "Such an act must be passed in the presence of the parties, and by them signed in the presence of the witnesses and the notary."

And in West La. Bank v. Dawson, 154 La. 830, 98 So. 262, 263, the court said: "Since, therefore, the law provides that an act to be authentic must be executed in a certain defined manner, it should appear *on the face of the act* that it was executed in the manner required." (Italics ours.)

■ The second question raised by counsel for the defendant bank, i. e., that the affidavit is admissible as a statement against interest, is not so easily disposed of. It is undoubtedly true that Mrs. Demasi, as partner in community with her husband, had an interest in the outcome of this litigation, and therefore any statement made by her, if considered to be against that interest, is admissible in evidence against the plaintiff, if it be shown that her testimony was unavailable.

■ It is likewise true that declarations against interest are universally recognized as exceptions to the hearsay rule and, as such, they are admissible, provided certain conditions obtain at the time the statement is given and at the time it is sought to be introduced in evidence.

Mr. Wigmore, in his famous and profound treatise on the law of evidence, has this to say with respect to statements of facts against interest: "The Exception presupposes, like most of the others, first, a Necessity for resorting to hearsay, i. e. the death of the declarant, or some other condition rendering him unavailable for testimony in court; and, secondly, a Circumstantial Guarantee of Trustworthiness, in this instance, the circumstance that the fact stated, being against the declarant's interest, is not likely to have been stated untruthfully. There is also to be considered the bearing of other independent rules of Evidence; and finally, there are certain arbitrary limitations resting on no reason at all." See volume 3, § 1455, p. 188.

It will be seen from the foregoing that, in order for the statement to be received in evidence, there must be (1) a necessity for resorting to hearsay and (2) a circumstantial guarantee of its trustworthiness. In the case at bar, there can be no doubt that the first requirement has been met because it is conceded that Mrs. Demasi was dead at the time the affidavit was sought to be admitted in evidence. But, in determining the presence of the second requirement, difficulty is encountered in ascertaining whether the facts surrounding the giving of the affidavit are such as to exhibit a circumstantial guarantee of its truthfulness. Mr. Wigmore explains that the basis for admitting this type of statement is the principle of experience "that a statement asserting a fact distinctly against one's interest is entirely unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting." Volume 3, § 1457, p. 191.

He also remarks: "It is sometimes said that the statement (as in other hearsay exceptions) must have been before litigation began. But this is only saying that the declarant's partisan attitude during litigation must be regarded as counterbalancing the interest prejudiced by the facts stated." Volume 3, § 1467, p. 202.

The author, in connection with the above quotation, refers to section 1464 of the text.

■ In the instant case, it should be noted that the affidavit of Mrs. Demasi was made some time after the first trial had been concluded in the district court and judgment entered in favor of the defendant bank. It should therefore be examined in the light of the surrounding facts and circumstances existing at that time in order to resolve whether it carries with it the requisite guarantee of truthfulness.

■ In delving into the principle of the circumstantial guarantee that a statement against interest is likely to be true and therefore there is no need for cross-examination, Mr. Wigmore states, in section 1464, vol. 3, p. 196, the following: "It has sometimes been said, loosely and in analogy to other hearsay exceptions, that there must be no motive to misrepresent; this being put as an additional requirement. *But there is no such additional requirement. The real object of this mode of statement is to furnish a test for a not uncommon situation,*—the situation in which, along with the disserving interest, *there is also a more or less palpable interest to be served by the fact. The real question is: Shall we*

*attempt to strike a balance between the two opposing interests and admit the statement only if on the whole the disserving interest preponderates in probable influence?* Or shall we regard the disserving interest as sufficient to admit, and leave the other merely to affect the credit of the statement? *The former alternative has by the courts been generally followed.* It must be noted, however, that so great a judge as Sir George Jessel has said that the latter alternative is the proper one, i. e. the counter-interest should affect only the weight of the evidence." (Italics ours.)

We believe that the test set forth by the author in the above quotation is sound, and we also feel that, if the serving interest of the statement preponderates over the disserving interest in probable influence, the declaration should not be admitted in evidence.

Let us apply this test to the affidavit under consideration. It must be borne in mind that, at the time it was made by Mrs. Demasi, she had previously testified, on the original trial of the case, that she neither withdrew any of the funds on deposit with the defendant bank nor were they withdrawn by her daughter with her authority, knowledge, or consent. Hence, we inquire: What was her purpose in making a statement (after the case had been concluded against her interest in the district court) that she had withdrawn these funds or that they had been withdrawn with her knowledge, approval, and consent (which was in direct conflict with her sworn testimony in the case)? This question is readily answered by the facts of the case as shown by the answer of the defendant and the affidavit itself. It will be remembered that, at the time the plaintiff filed this suit, there was still a balance in the savings account of $70.17 and that the bank contended that it did not know to whom this balance belonged for the reason that it was uncertain as to whether Mrs. Demasi or her daughter, Mrs. Arena, was the depositor. This position has been maintained by the bank throughout the litigation. Forasmuch as Mrs. Demasi at all times claimed ownership of the deposit and because of the pendency of this suit, the bank was only too willing to turn over to her this balance of $70.17, provided she consented to make a statement calculated to defeat her husband's recovery in these proceedings. She signed this document knowing that she would gain $70.17 by so doing and, from this point of view, the affidavit must be considered as a statement tending to serve her interest. The disserving interest of the statement is her admission that the withdrawals from the savings account had been made by her or with her knowledge, approval, and consent. The problem is therefore: Which interest preponderated? Did she feel that she would obtain more by executing the document than she would lose in the event she failed to sign it? We cannot judge the disserving interest of the statement by what Mrs. Demasi would have gained in dollars and cents, had she not signed it, as it must be borne in mind that the suit, brought by her husband, had already been tried in the district court and the judgment was adverse to his (and his wife's) interest. Hence it cannot fairly be said that, to the mind of Mrs. Demasi (for it is shown that she was an ignorant woman), she lost anything by signing the affidavit because it is probable that she felt (notwithstanding the appeal taken by her husband) there was little or no hope of success in maintaining the present suit for the recovery of the deposit. We believe that the interest which was uppermost in her mind (and which was the prevailing influence) was the fact that, by signing the document, she would receive $70.17 which she could not otherwise obtain. Moreover, it cannot be justly assumed that this woman realized that, by signing this affidavit, she was confessing that her testimony, given in this case, was false.

For these reasons, we find that the affidavit executed by Mrs. Demasi, while containing statements against her interest, also contained statements serving her interest; that the latter preponderated over the former; and that it was really the interest favorable to her which influenced her act. Therefore, under the rule laid down by Mr. Wigmore and supported by the common-law authorities, the affidavit was inadmissible in evidence because the mere fact that it was made and contained a statement against interest did not clothe it with the necessary guarantee, when viewed in the light of the particular circumstances of its execution (i. e., that the serving interest of the document preponderated over the disserving interest in probable influence), that the same was not likely to have been deliberately false and heedlessly incorrect.

The judge a qua erred in receiving the affidavit in evidence and should have sustained the objection made by plaintiff's

counsel. With its elimination, there is no other evidence produced by the defendant on the second trial of the case, which would excuse it from liability.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, Cosimo Demasi, and against the defendant, Whitney National Bank of New Orleans, in the full sum of $629.14, with legal interest on $699.31 from judicial demand to March 6, 1935, and with legal interest on $629.14 from March 6, 1935, until paid, and for all costs of court.

Reversed.