**Annie C. GORNTO, Petitioner,**

v.

**Ellis McDOUGALL, Director of the Division of Corrections, O. T. Nichols, Solicitor of the State Court of Glynn County, et al., Respondents.**

Civ. A. No. 1066.

United States District Court,
S. D. Georgia,
Brunswick Division.

Jan. 31, 1972.

Hugh W. Gibert, Haas, Holland, Freeman, Levison & Gibert, Atlanta, Ga., for petitioner.

William R. Killian, Lissner & Killian, Brunswick, Ga., for respondents.

## ORDER

LAWRENCE, Chief Judge.

Mrs. Annie C. Gornto who operates a bookstore at Brunswick, Georgia, was found guilty by a jury in a Glynn County court of distributing obscene materials, contrary to a Georgia statute. The prosecution was based on the sale by her of a magazine entitled "Whiplash Lovers."

In applying for a writ of habeas corpus in this Court, following exhaustion of state remedies, Petitioner contends that the publication is not obscene and that the prosecution for distributing it violated her First Amendment rights. She also urges that the First and Fourteenth Amendments require that the magazine be judicially determined to be obscene and notice thereof given to her prior to the sale for which she was convicted.

The case was submitted to the Court by the parties on the basis of the trial record. Respondents have moved to dismiss the petition.

This is not Mrs. Gornto's first appearance here. She was indicted by a grand jury in Glynn County on September 13, 1968, for the alleged crime. Before she was brought to trial she filed an action in this Court seeking to enjoin the prosecution on the ground that the Georgia statute is invalid both facially and as applied in her case. I denied relief on the basis of a decision by a Three-Judge District Court in the Northern District of Georgia which held that the Georgia statute is valid. See Gable v. Jenkins, D.C., 309 F.Supp. 998, affirmed, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595.

On appeal from my ruling the Fifth Circuit remanded Mrs. Gornto's case with direction to this Court to dismiss the action for failure to state a claim for federal intervention in the light of the line of decisions illustrated by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. See Gornto v. Thomas, 5 Cir., 439 F.2d 1406.

The Georgia obscenity statute was amended by the Legislature in 1968. The amendment sought to track the standards of obscenity laid down in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. The holding in that case was thus summarized in A Book Named "John Clelland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1:

"Three elements must coalesce; it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The 1968 Georgia statute [Ga.Code Ann. § 26–2101(b) and (c)] states:

"(b) Material is obscene if considered as a whole, applying community standards, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and utterly without redeeming social value and if, in addition, it goes substantially beyond customary limits of candor in describing or representing such matters. . . .

"(c) Material, not otherwise obscene, may be deemed obscene under this section if the distribution thereof, or the offer to do so, or the possession with the intent to do so is a commercial exploitation of erotica solely for the sake of their prurient appeal."

■ The trial judge charged the jury accordingly in Mrs. Gornto's case. After defendant was found guilty, she appealed to the Supreme Court of Georgia. It carefully considered the constitutional and other legal questions and affirmed the conviction. See Gornto v. State, 227 Ga. 46, 178 S.E.2d 894. Defendant's contentions as to the unconstitutionality of § 26–2101 were denied. The Court also held that no adversary hearing prior to institution of a criminal action is necessary where there is a sale rather than a seizure of alleged pornographic material. I had ruled the same way in the Gornto case in 1969. I reaffirm what I then held.

The Supreme Court of Georgia further said in Gornto v. State (p. 47, 178 S.E.2d p. 896):

"The sole contents of the magazine sold by appellant were photographic depictions of nudity (including unclothed human male and female genitalia in close proximity) and acts of homosexuality, sadism and masochism, and verbal descriptions (in coarse, vulgar language) of acts of masturbation, homosexuality, sodomy, bestiality, sexual intercourse (fornication), sadism or masochism. The jury was correctly charged as to the statutory definition of obscene material, as contained in Code Ann. § 26–2101(b, c). Their finding, that the above described material comes within such statutory definition, is authorized by the evidence, which supports their verdict of guilty."

■ Following the Gornto decision, the Supreme Court of the United States denied application for certiorari. Defendant has now returned to this Court with an application for writ of habeas corpus. She seeks to relitigate the same constitutional issues and also the sufficiency of the evidence as to obscenity on which she was convicted. Defendant was sentenced to twelve months imprisonment but this was suspended by the State Court Judge and probation was granted. A fine of $1,006.50 was imposed. Mrs. Gornto is in constructive state custody and this Court has jurisdiction to grant the writ of habeas corpus. See Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554; Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285; Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578; Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426.

I confess to a feeling akin to dismay when I learned that after more than two years of litigation the finding by the jury that the magazine was obscene must be independently evaluated by this Court so as to determine *de novo* whether there has been a violation of defendant's First Amendment rights. In Childs v. Oregon, 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542, there was a state court conviction for disseminating a book entitled "Lesbian Roommate." On appeal, the Supreme Court of Oregon held that the publication was obscene within the standards of *Roth*. See 252 Or. 91, 447 P.2d 304, at 306–307. Following exhaustion of state remedies, there was a petition for writ of habeas corpus in a federal district court in Oregon. The judge ruled that the book in question was not obscene. 300 F.Supp. 649. The Ninth Circuit reversed his holding in 431 F.2d 272. Certiorari was

granted by the Supreme Court of the United States. It summarily reversed the Circuit Court of Appeals, citing Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515.

In Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793, the Supreme Court said that it could not avoid making an independent judgment as to whether the condemned material (a film) was obscene. In United States v. Klaw, 350 F.2d 155, 160 the Second Circuit said: "The most cursory perusal of the cases makes it obvious that the various agencies, officers, judges and juries that initially find material 'obscene' do not have the last word to say on the matter."

The obligation of federal courts in obscenity cases is dealt with in a recent decision by the Fifth Circuit. In United States v. Groner (No. 71–1091, January 11, 1972) it was said:

"There remains little doubt that this Court is obligated to make an independent evaluation on the issue of whether the material in question is obscene. The issue of obscenity involves the application of first amendment rights to the printed word. The courts, not the reasonable jury or even the majority of reasonable men, are responsible for the protection of freedom of speech."

The Court of Appeals for this Circuit went on to say in that case:

"Recent Supreme Court opinions furnish little guidance in this area. There exists between Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967), and United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971), a wide chasm of confusion, which is accentuated by frequent Supreme Court reversals in obscenity cases, citing only *Redrup*."[1]

In a concurring opinion in *Groner* Judge Clark elaborated on the chaotic state of the law relating to obscenity.

He said, ". . . [T]he judiciary has created a quagmire. . . . If I were not bound by these mutable precedents, I would unhesitatingly abandon the 'national standard' concept and return the problem of what is unprotected hard-core prurience to the fifty individual laboratories—the States—which make up our united republic, with every confidence that they will protect federal Constitutional guarantees better than we."

In his concurring opinion in *Jacobellis, supra*, Justice Potter Stewart made an apposite observation. "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I shall never succeed in intelligibly doing so. But I know it when I see it." (378 U.S. p. 197, 84 S.Ct. p. 1683). I think I do, too.

■ "Whiplash Lovers" is wholly without redeeming social value; it affronts standards of any community, and it appeals solely to prurient interest in sex. The issue in question contains articles entitled "Beat My Darling," "The Blonde Beauty," "Ape Over You" and "Sex and Sadism." The magazine consists of forty-eight pages, including the front and back covers. Forty pages consist of photographs. They show nude males and females in sex acts, including sodomy, fellatio, cunnilingus, sadism and masochism. The remaining pages of the magazine are devoted to articles that satisfy any conceivable definition of hard-core obscenity. The photographs are in no way connected with the printed matter. "A Blonde Beauty and a Gorilla" is a story of a young man who follows a girl one evening into a zoo where he observes her engaging in multiple acts of bestiality with the apes, including sexual intercourse, masturbation, sodomy and voyeurism, etc. The second story, "Beat My Sweet Darling," is an account of sex and sadism between a prostitute and a boyfriend. The other

---

1. Numerous instances are cited in *Groner*. The brief filed on behalf of the Petitioner in the present case lists a number of other such *per curiam* reversals.

articles are on the same pornographic level. Four-letter references to sex acts and sexual parts abound in all of them.

I realize the difficulty in defining obscenity and the proper balancing of the right of the public to be free from the blatantly obscene and an individual's right to free expression.[2] Perhaps there is no satisfactory solution. In Obscenity and Public Morality (University of Chicago Press, 1969) p. 279, Harry M. Clor writes, "The dilemma of Vietnam will be resolved, one way or another; someday we will be free of it. But the dilemma of free expression, public morality, and the law will not be resolved; we will not be free of it someday. This is a pervasive and permanent problem of civilized society." But surely there is a better approach to the problem than the somewhat Bedlamite one illustrated by the present case. Here we have a state prosecution for selling obscenity and a conviction after a charge to the jury that covered the applicable constitutional standards. This was followed by an appeal to the Supreme Court of Georgia where there was an affirmance as to the constitutional and other issues in the case. This was followed by denial of certiorari by the Supreme Court of the United States.

Yet everything up to that point is but idle show, a spinning of judicial wheels. All that has been accomplished so far is to make a record in the trial court upon which the federal courts will on habeas corpus application render a *de novo*, apodictic judgment as to obscenity and First Amendment protection. And when I say federal courts I mean three separate levels of the judiciary—district courts, courts of appeal and the Supreme Court, each deciding for itself, according to its own lights, the matter of obscenity *vel non.*

There is a wonderlandish, Oz-like quality about the whole thing. The function of federal courts in these cases is a bewildering anomaly. Do they review the trial court record and determine whether or not the publication is obscene as a matter of law? Or do they determine such as a matter of fact and as though they were jurors?[3] Does the verdict of a state jury finding a publication to be obscene under proper instructions carry any weight at all?[4]

If the federal judge is a fact finder, is an evidentiary hearing and the taking of additional testimony in order?

In *Groner, supra,* a majority of the Fifth Circuit said that they preferred to

2. In Great Britain the Parliament and the courts have had equal difficulty in formulating a definition of obscenity and in dealing with the problem. Lord Justice Salmon commented in the case of Last Exit to Brooklyn that a jury must be told to "consider on the one hand the number of readers you believe would tend to be corrupted by the book. Then the strength of its tendency to deprave and corrupt. And then the nature of that corruption and depravity. On the other hand you must assess the strength of the literary, sociological or ethical merit which you consider the book to possess. Then you must weigh up all these factors and decide whether, on balance, the publication is proved to be justified as being for the public good . . . ." C. H. Rolph, "The Abuses of Literacy—1," Times Literary Supplement, January 14, 1972, p. 34.

3. Perhaps the federal courts do neither. In his dissent in Roth v. United States,

*supra*, Justice Harlan said that a finding of obscenity "involves not really a question of fact but a question of constitutional *judgment* of the most sensitive and delicate kind." pp. 497–498. See also United States v. Pinkus, D.C., 333 F. Supp. 928, 931.

4. In 1971 the Wisconsin Supreme Court held that where a jury is properly instructed as to constitutional tests, its verdict must be upheld whenever it is supported by substantial evidence. The Court adopted, in this respect, the dissenting view of Chief Judge Lumbard in United States v. A Motion Picture Film Entitled "I am Curious—Yellow", 2 Cir., 404 F.2d 196, 203, 204 and the ideas expressed by Chief Justice Warren and Justice Clark in *Jacobellis, supra.* See Court v. Wisconsin, 51 Wis.2d 683, 188 N.W.2d 475. As I read the Fifth Circuit decision in United States v. Groner, what the jury thinks means nothing unless the verdict is one of acquittal.

rely on expert testimony presented at the trial (which was lacking) since otherwise their "personal standards of prudence and decency" would become the impermissible basis of granting or denying First Amendment protection. At the trial of Mrs. Gornto a clergyman who was a witness for the State reviewed the contents of "Whiplash Lovers" in detail and testified that in his opinion the magazine, judged by local as well as standards of other communities where he had resided, goes "beyond the normal acceptable standards of this community, and that it does appeal, that it would appeal to the prurient interests, a shameful and morbid interest in sex to the average person." [5] See Record, The State v. Gornto, p. 137.

In United States v. 77 Cartons of Magazines, D.C., 300 F.Supp. 851, 855 the District Judge said, "What other judges may think about the material in the magazines is for other judges. This judge has reviewed all of the magazines submitted and, applying the *Roth* standards, he finds them obscene." [6] "Whiplash Lovers" seems to me more sexually orgiastic and perverted than the magazines found to be obscene in that case as well as in Miller v. United States, *supra*. I conclude that the Gornto jury was authorized to find that the magazine was obscene under First Amendment standards. Evaluating the publication independently and in accordance with constitutional criteria, I am of the view that it is obscene. The sale thereof was prohibited by a valid Georgia statute and the First Amendment does not protect the seller. I say this with full recogni-

tion of the fact that the numerous summary reversals in obscenity cases by the federal Supreme Court on the strength of *Roth* and *Redrup* suggests the possibility that anything goes in pornography, printed or pictorial. I will only add that it is a strange sort of Bill of Rights that guarantees the inalienable right to sell unspeakable filth.

The application for writ of habeas corpus is denied and the petition is dismissed.

---

5. In the Gornto case the Judge instructed the jury as to "community standards" in terms of *Roth* and the 1968 Georgia Act. The Court did not inform the jurors whether the standards are local, state or national. There was no exception to his charge. Counsel for Mrs. Gornto took the position that "we are to apply the community standards in which we live." The geographical extent of a "community" is not clear. See Jacobellis v. Ohio, *supra*, 378 U.S. at 192, 84 S.Ct. 1676; Gornto v. State, 227 Ga. at 48, 178 S.E.

2d 894; United States v. Klaw, *supra*, 350 F.2d at 164; United States v. Groner, *supra*; Miller v. United States, 9 Cir., 431 F.2d 655, 659. Within the past two weeks a case, Miller v. California, was argued in the highest Court involving the issue of whether "contemporary community standards" means statewide or nation-wide ones. See 10 Cr.L. 1063.

6. Reversed on other grounds, 9 Cir., 444 F.2d 80.