**Joseph LOWE, Jr., Petitioner,**

**v.**

**E. B. CALDWELL, Warden, Georgia State Prison, Reidsville, Georgia, Respondent.**

**Civ. A. No. 3078.**

United States District Court,
S. D. Georgia,
Savannah Division.

Nov. 6, 1973.

John J. Sullivan, Savannah, Ga., for petitioner.

Andrew J. Ryan, III, Chief Asst. Dist. Atty., Savannah, Ga., for respondent.

## ORDER

LAWRENCE, Chief Judge.

Joseph Lowe was convicted in Chatham Superior Court of the murder of his wife and of arson. He was sentenced to life imprisonment for murder and to three years on the arson charge. He has filed a § 2254 petition in this Court for the writ of habeas corpus. It is confined to the claim of unconstitutional search and seizure of his automobile resulting in removal therefrom by the police of a packet containing personal papers.

The theory of the prosecution was that the accused burned down his house after killing his wife. At the scene of the fire Sergeant Lowery removed the article which was on the floorboard of Lowe's car. His attention had been called to it by a member of the family of the accused. Lowery testified that he was informed that "some papers and a money bag" were in the car and that they did not wish to be responsible for them. Without a search warrant and not knowing to whom the property belonged, he took possession of it. Petitioner was in custody at the time and gave no permission to anyone to take the effects from the vehicle. Sergeant Lowery said he assumed custody of the package for security reasons.

The pouch was carried to headquarters where later Lowery inventoried the contents. Within the packet was found some insurance policies, tax receipts and other papers, including an envelope containing a letter in Lowe's hand to his wife. No date appeared thereon. Apparently it was written several months before the crime.

While there was independent evidence warranting a finding of guilt of murder and arson, the letter was highly damaging to the defense. The Supreme Court of Georgia said that "The letter which the defendant sought to suppress and to exclude from the evidence, the contents of which the defendant subsequently sought to explain as only a joke, is strongly indicative of a contemplated murder-suicide, and is somewhat testamentary in character." Lowe v. State, 230 Ga. 134, 135, 195 S.E.2d 919, 920.

At the trial petitioner's counsel moved to suppress such evidence and there was a hearing outside the presence of the jury. Counsel contended that in searching the car the police were "just ransacking to see what was available." The State replied that there was no search and that the officer simply "became the custodian of the papers". Transcript,

11, 14. Judge Harrison commented (Tr. 13):

"Why didn't the member of the family just keep the papers if they were just a bunch of harmless papers. There was certainly plenty of time to get a search warrant to search the car. I don't understand the officer's testimony to the effect that they had the defendant in custody and had been told that that was his automobile. It just seems to me that the only purpose in the world of going into the car and getting the papers was the purpose of using them as evidence if they amounted to evidence." Transcript, 13.

The trial judge overruled the motion to suppress the letter "under the peculiar facts and circumstances involved in this situation".[1] Tr. 14. Following a verdict of guilty and a denial of the motion for new trial, defendant appealed. The Georgia Supreme Court affirmed the ruling below, holding:

"In our opinion the above facts disclose a situation as devoid of any implications of an unconstitutional search and seizure as that ruled upon in Division 3 of the majority opinion in Coolidge v. New Hampshire, 403 U.S. 443, 484, 91 S.Ct. 2022, 29 L.Ed. 2d 564. Here, as in the *Coolidge* case, the circumstances are clear in disclosing that the incriminating evidence came into the possession of the law enforcement authorities inadvertently and unmotivated by any desire to locate incriminating evidence by any unlawful search and seizure." 230 Ga. 136, 195 S.E.2d 921.

Defendant then filed a petition for writ of habeas corpus in the Superior Court. An evidentiary hearing was held in March, 1973. Lowe relied solely on the claim of unlawful search and seizure. At the habeas corpus hearing Lowery testified that at the time he removed the package from the car defendant was under arrest; that other policemen were present; that there was nothing to prevent a search warrant being obtained; that the automobiles near the burning building were not endangered, and that the pouch did not appear to contain any weapon or contraband. At the conclusion of the hearing Judge Harrison remanded the prisoner to the custody of the Sheriff, stating that he was bound by the decision of the Supreme Court of Georgia.

Taking stock of what occurred in the State courts in respect to the search and seizure question, we find: (1) an evidentiary hearing out of the jury's presence at the start of the trial on the motion to suppress the letter; (2) testimony during the trial involving such incriminating evidence; (3) an appeal from the denial of a motion for new trial and a unanimous affirmance by the Supreme Court of Georgia of the trial judge's search and seizure ruling; (4) a subsequent State habeas corpus proceeding and another evidentiary hearing on the constitutional issue at the conclusion of which the trial judge denied the issuance of the writ.

All this has accomplished but little in the way of finality of the conviction for murder besides exhaustion of state remedies necessary to seeking federal habeas corpus relief. What has occurred in the State courts in regard to the search and seizure question is largely a going through of motions, a mechanical performance of a routine—*sauter le bâton*, to use a French expression, like a monkey "jumps the stick". It hardly need be added that state judges resent this perfunctory role in federal post-conviction law.

■ Federal courts must make their own independent determination as to whether a search and seizure offends Federal search and seizure standards. Peters v. Rutledge, 397 F.2d 731 (5th Cir.); State of Montana v. Tomich, 332

---

1. Earlier in the suppression hearing the trial Judge said: "I understand the officer's testimony that a member of the family just told him to take charge of those things. He really wasn't making a search of the car to try to find any evidence." Tr., 11.

F.2d 987 (9th Cir.); Durham v. Haynes, 258 F.Supp. 452, aff'd. 368 F.2d 989 (8th Cir.), cert. den. 390 U.S. 959, 88 S. Ct. 1054, 19 L.Ed.2d 1154. The Fourth Amendment is enforceable against the states by the same sanction of exclusion as is used against the Federal Government (Mapp v. Ohio, *supra*, 367 U.S. 643 at .655, 81 S.Ct. 1684, 6 L.Ed.2d 1081) and "application of the same constitutional standard prohibiting 'unreasonable searches and seizures.'" Ker v. California, 374 U.S. 23 at 30–31, 83 S.Ct. 1623 at 1628, 10 L.Ed.2d 726.

After this Court has ruled on the constitutional issue, the post-conviction carousel will turn to the Fifth Circuit Court of Appeals. From there certiorari lies to the Supreme Court of the United States. The prisoner's challenge of the conviction may then start out anew in the state court on different constitutional grounds.[2] In many state cases where a substantial sentence has been imposed resort to the federal courts for habeas corpus relief is a continuing and almost endless process. As this Court remarked on another occasion and in a similar situation, "surely there is a better approach to the problem than the somewhat Bedlamite one illustrated by the present case." Gornto v. McDougall, D.C., 336 F.Supp. 1372, 1376. By way of postscript, the procedural gallimaufry that the federal courts and Congress have contrived is apparently here to stay.[3] Therefore, distasteful though the task may be, I am compelled to independently review and evaluate the conclusions reached by the State courts as to the search and seizure here involved.

Under the Fourth Amendment, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Mr. Justice Black pointed out in *Coolidge* (403 U.S. p. 496, 91 S.Ct. p. 2053) that the Amendment "nowhere provides for the exclusion of evidence as the remedy for violation. . . . No examination of that text can find an exclusionary rule by a mere process of construction."

The history of the Rule can be told in four cases:

"A dictum in Boyd v. United States [116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746] suggested for the first time that evidence obtained in violation of the fourth amendment should be inadmissible in court. After being ignored for thirty years, that suggestion became law in the federal courts in 1914 in Weeks v. United States [232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652]. In 1949 the fourth amendment right to immunity from unreasonable search and seizure was recognized as applica-

2. Former Attorney General Richard Kleindienst has said: "One of the chief factors that has slowed and frustrated the justice process has been the interminable collateral attacks made possible by the post-trial use of the Federal writ of habeas corpus. While I recognize the place of collateral attack in the justice process, I do deplore the abuse of it that has mushroomed in the past 20 years." 118 Congressional Record, July 24, 1972. See also, George Cochran Doub, "The Case Against Modern Federal Habeas Corpus," Am.Bar Assc.Journal (April, 1971), 323–328; Evelle G. Younger, "State v. Uncle Sam," Am.Bar Assc.Journal (February, 1972), 155–159; "Alternative Approaches to Exhaustion of State Remedies in Federal Habeas Corpus," Washington and Lee Law Review, XXX (Summer, 1973), 247.

3. There is pending in the Senate a bill (S. 3833) to revise court review of habeas corpus petitions under 28 U.S.C. § 2254 and § 2255. If enacted, the legislation will be helpful although it is largely palliative. It would limit federal review of state convictions to cases where the claimed constitutional violation has "as its primary purpose protection of the reliability of either the fact-finding process at the trial or the appellate process on appeal from the judgment of conviction." In connection with this subject, see Note, "Proposed Modification of Federal Habeas Corpus for State Prisoners —Reform or Revocation?", 61 Georgetown Law Journal (May, 1973), 1221.

ble to state as well as to federal action in Wolf v. Colorado [338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782], but the Court declined to impose the exclusionary rule as a required method of enforcement. Finally, in Mapp v. Ohio, decided in 1961, the Court imposed the exclusionary rule on the states, holding that the failure to exclude evidence that state officers had obtained by an unreasonable search and seizure violated the defendant's rights under the due process clause of the fourteenth amendment." [4]

The rationale of the Exclusionary Rule is that it is "the only effective deterrent to lawless police action". Linkletter v. Walker, 381 U.S. 618, 636, 85 S.Ct. 1731, 1741, 14 L.Ed.2d 601. "[E]xperience has taught that it is the only effective deterrent to police misconduct in the criminal context, and that without it the constitutional guarantees against unreasonable searches and seizures would be a mere 'form of words'." Terry v. Ohio, 392 U.S. 1, 12, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889.[5] Opponents of the rule claim that there is no convincing evidence that it has deterred illegal behavior of law enforcement officials. Some think that it has merely created a Witches' Sabbath for the criminal element.

In Coolidge v. New Hampshire the late Mr. Justice Harlan said in his concurring opinion that "the law of search and seizure is due for an overhauling." He would "begin the process" by overruling Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 and Ker v.

California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 and thought that no progress would result in "setting things straight" until "those constitutional mistakes were corrected." Mr. Justice White complained in the same case that the majority decision only increased the confusion where there had been "a ready opportunity * * * to bring clarity and certainty to a body of law that lower courts and law enforcement officials often find confusing." It was supposed by some that a case now before the Supreme Court might become the vehicle for reevaluation of Weeks v. United States, *supra,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.[6] While certiorari was not granted for such purpose, the exclusionary rule is the target of a full-scale assault in the Government's brief. In the oral argument last month before the Supreme Court its counsel did not emphasize that aspect of the case. The possibility, however, of a review of the doctrine remains.

Courts decide search and seizure issues on a *case-by-case basis.* United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 94 L.Ed. 653; Sibron v. New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 20 L.Ed.2d 917. Seldom does a warrantless search and seizure have a twin. Some of the decisions (*Coolidge,* included) are a farrago of analysis of other cases, analogy, distinction, discerption, antinomy and doctrinal dichotomy and trichotomy. To read the summary of the recent arguments and colloquy in United States v. Robinson and Gustafson v. State leaves one with a feeling of having

---

4. See Dallin H. Oaks, "Studying the Exclusionary Rule in Search and Seizure," 37 Univ. of Chicago Law Rev. (1970), 667f.

5. The pros and cons of exclusion of unlawfully obtained evidence are found in Professor Oaks' study, pp. 668–678; Elkins v. United States, 364 U.S. 206 at 216–217, 80 S.Ct. 1437, 4 L.Ed.2d 1669; "Restricting the Scope of Searches Incident to Arrest: United States v. Robinson", 59 Virginia Law Review (April, 1973), 724; LeFave, "Warrantless Searches and the Supreme Court: Further Ventures into the 'Quagmire'", 8 Criminal Law Bulletin, 9 (1972). For strictures

of Chief Justice Burger on the exclusionary rule, see Bivens v. Six Unnamed Agents of Federal Bureau of Narcotics, 403 U.S. 388, 412–414, 91 S.Ct. 1999, 29 L.Ed.2d 619.

6. The case is United States v. Robinson, 471 F.2d 1082 (D.C.Cir.). State v. Gustafson, 258 So.2d 1 (Fla.) was argued at the same time. Both cases involve searches of a person upon arrest for driving without a license. Incidentally, a bill pending in the Senate (S.2657) would limit the exclusionary rule to cases of "substantial" Fourth Amendment violation. No committee hearings have been held up to now.

been present at a convocation of Schoolmen in the eleventh or twelfth century.

Nearly every term of the high Court brings some new landmark of Fourth Amendment interpretation: Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; United States v. Elkins, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669; Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L. Ed.2d 730; Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L. Ed.2d 917; Chimel v. California, 395 U. S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 and, soon to be, *Robinson* and *Gustafson.* These *causes célèbres* have made it no easier to find the way in cases of warrantless search and seizure. The confusion not only persists, it is compounded. The decisions become but a point of new departure for new refinements.

"In no other field has the law's uncertainty been more clearly manifested," said Mr. Justice Black in 1950 in United States v. Rabinowitz, 339 U.S. at 67, 70 S.Ct. at 445. In the dissent of Justice Clark in Chapman v. United States, 365 U.S. 610, 622, 81 S.Ct. 776, 783, 5 L.Ed.2d 828 he stated in 1961

that "For some years now the field has been muddy, but today the Court makes it a quagmire." Ten years later Mr. Justice White would complain in *Coolidge* (403 U.S. p. 521, 91 S.Ct. p. 2065) that the decision of the Court merely increased the confusion "by clinging to distinctions that are both unexplained and inexplicable." Against this background of confusion and uncertainty, this Court proceeds to its decision on the issue presented in the § 2254 proceeding before it.

We are met at the beginning by interpretational difference of opinion in respect to the intent and effect of the Fourth Amendment in warrantless searches. The prevailing view or doctrine is thus expressed in the opinion of the Court in Coolidge v. New Hampshire, at 454–455, 91 S.Ct. at 2032:

> "Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' [Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576] The exceptions are 'jealously and carefully drawn.' [Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514] and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' " [McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153].[7]

Opponents of the ascendant doctrine (*per se* unreasonableness of warrantless searches) say that what the Fourth Amendment prohibits is *unreasonable* search and seizure and that that factor should be emphasized over its warrant requirement.[8] The relevant test, accord-

---

7. Citing *Coolidge,* the Court of Appeals for the Fifth Circuit has recently said: "We must therefore analyze the reasons advanced by the government toward fulfilling its burden and determine if the warrantless search of the suitcases fits within one of the well-defined exceptions to the fourth amend-

ment's warrant requirement." United States v. Soriano, 482 F.2d 469, 473.

8. See the concurring opinion of Justice Harlan in Coolidge v. New Hampshire, 403 U.S. 492, 91 S.Ct. 2022.

ing to Justice Black, "is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all the circumstances." *Coolidge,* 509, 91 S.Ct. 2060.

Numerous exceptions have been created to the necessity of search warrants in certain instances. "The courts and the commentators have pigeonholed and labeled many of the 'exceptional' cases," said the Court of Appeals for this Circuit in Carlton v. Estelle, 480 F.2d 759, including

". . . the 'automobile' exception, see, e. g., Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543; others are said to represent the 'plain view' exception, see, e. g., Ker v. California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; others, the 'search incident to a lawful arrest' exception, see, e. g., Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; others, the 'stop and frisk' exception, see, e. g., Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; others, the 'abandonment' exception, see, e. g., United States v. Colbert, 5 Cir., 1973, 474 F. 2d 174 (en banc); still others, the 'hot pursuit' exception, see, e. g., Warden v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, and so on."[9]

To this catalogue may be added the "inventory" search (United States v. Lipscomb, 435 F.2d 795, 5th Cir.); "permissive" (United States v. Jones, 475 F.2d 723, 728–729, 5th Cir.); "border" (Morales v. United States, 378 F.2d 187, 5th Cir.) and "administrative" search (See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943).

Four of the above exceptions to the *"per se* unreasonable" rule have possible relevance here—the "automobile" search, "incident to a valid arrest", "plain view" and "inventory" exceptions. The State

does not seek to justify the alleged "search and seizure" on the first two theories.

Before going further, a word is in order on the subject of validity of any search warrant issued at the time Lowe was arrested with respect to the pouch in the car. Petitioner's brief stresses the failure of the police to obtain possession of same by procuring a search warrant. There was ample opportunity to do so. There were no exigent circumstances to excuse such failure. The accused was in custody at the time and his automobile could not be driven away. The fact remains, however, that no search warrant could have validly issued since probable cause for a judicially-authorized search of the vehicle was absent. A supporting affidavit cannot be based on mere suspicion or curiosity. Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159; Gonzales v. Beto, 425 F.2d 963, 968 (5th Cir.); United States v. Winer, D.C., 294 F. Supp. 731. Of course, this does not mean that the fact that a search warrant could not be validly obtained creates any authority on the part of law enforcement officers to make a warrantless search.

■ In my opinion, the discovery of the pouch in the car did not constitute any "search" and the appropriation thereof was no "seizure" within the intendment of the Fourth Amendment. Sergeant Lowery was not aware that the papers were in the vehicle until so informed by a member of the family. Lowe's sister-in-law "didn't want to touch it". Tr. 4. According to Lowery's testimony at the State hearing, she showed it to him. "They had found some papers and a money bag" and said they "didn't want to be responsible for them and turned them over to us". Tr. p. 7. "To make sure nothing happened to them" the officer took possession of

---

9. The Court added in Carlton v. Estelle that "These labels are useful; they are not substitutes for thought. We use them, but we use them with care. Some cases fall between the categories. The labels do not always fit. Many decisions turn, not upon the labels, but upon a close analysis of the facts."

same.[10] It did not occur to Lowery that they might contain evidence of an incriminating nature.

No meritorious claim of Fourth Amendment violation exists up to the arrival of the packet at the station house. What happened to it thereafter is the subject of the same constitutional challenges made in respect to the removal of the pouch from the car at the scene of the fire. Here we get into the "inventory" exception to warrantless searches.

■■ The discovery of evidence by law enforcement officers while making an inventory of a prisoner's belongings is said not to be the result of a search but of protection of property while in police custody. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L. Ed.2d 1067. The Fifth Circuit has cautioned that "inventory" searches "can be the subject of abuse" and has said that "It is temptingly simplistic to employ the phrase 'inventory' as though uttering it solves everything, and all too easy to state overbroadly the interests which 'inventory searches' vindicate. . . ." United States v. Grill, 484 F. 2d 990 (1973). Custody of a prisoner's property for the purpose of protecting same while he is incarcerated does not constitute in itself a basis for exception to requirement of a search warrant. Brett v. United States, 412 F.2d 401, 406 (5th Cir.). The right of seizure of objects in plain view does not, without more, include effects found within handbags, brief cases, suitcases and parcels. United States v. Robinson, *supra,* 471 F.2d 1090, note 9; United States v. Soriano, *supra,* 482 F.2d at 473.

■ There was evidence in the present case justifying the finding that Sergeant Lowery in examining the contents of the pouch was making an inventory rather than a search and that he was not looking for incriminating evidence against the accused.[11] Inventorying an arrestee's belongings is a reasonable procedure for the protection of his property and for that of the police. Suppose, for example, Lowe should subsequently claim that a sum of money was among the papers. See United States v. Lipscomb, *supra,* 435 F.2d 795 (5th Cir.); United States v. Kelehar, 470 F.2d 176, 178 (5th Cir.). Good faith examination and inventorying of the contents of impounded cars has been consistently approved in the Fifth Circuit. United States v. Lipscomb, *supra;* United States v. Boyd, 436 F.2d 1203 (5th Cir.); United States v. Pennington, 441 F.2d 249 (5th Cir.); United States v. Kelehar, *supra.*

Petitioner places strong reliance on Mozzetti v. Superior Court of Sacramento County, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84. There the California Supreme Court limited the scope of the police practice of routinely preparing a complete inventory of the contents of a motor vehicle where law enforcement officers place an automobile in storage. Before the vehicle was towed away from the scene of an accident, an unlocked suitcase was opened in order to determine if it contained valuables. Marihuana was found. The California Court held that the search and seizure was unreasonable.

*Mozzetti* expresses a minority viewpoint and has received a mixed reception in jurisdictions beyond California.[12]

10. It is contended by petitioner that nobody had authority to permit· any search of his automobile or to remove any of his personal effects. Lowe had been arrested. The police were investigating the burning of his dwelling. His wife was missing. The police did not act unreasonably under these circumstances in taking possession of the package.

11. I suppose it could be argued that even if the police had the right to inventory the contents of the pouch, the officer doing so

should have stopped the moment he sensed that the letter might be incriminating and should have obtained a search warrant before going further. This is an instance of the hair-splitting refinements frequently associated with the problem of warrantless searches.

12. James L. Williamson, "Inventory Searches, The California View", FBI Law Enforcement Bulletin (May, 1973), 12, 13. This article deals with *Mozzetti*.

Oregon, New York and the Ninth Circuit have rejected it. See State v. Keller, (Or.1972) 497 P.2d 868; People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464; United States v. Mitchell, 458 F.2d 960 (9th Cir.).[13] Only Arizona has fully adopted California's "inventory" rule. Boulet v. Arizona, 17 Ariz.App. 64, 495 P.2d 504.

In the present case the Supreme Court of Georgia affirmed the denial of the motion to suppress Lowe's incriminating letter entirely on the ruling in Division III of the opinion in Coolidge v. New Hampshire, 403 U.S. 487–490, 91 S.Ct. 2022. That part of the decision deals with the overruling by the trial court of a motion to suppress articles voluntarily turned over to the investigating officers by Coolidge's wife without the knowledge or consent of her husband. The trial judge found that the plainclothesmen who visited the residence of the suspect were not looking for the murder weapon and that no seizure was intended. In a spirit of cooperation and without coercion, they were allowed to take away certain rifles and articles of clothing. Under these circumstances, the highest Court ruled that the conduct of the officers did not amount to a search and seizure and that the suspect was not constitutionally protected against the good faith cooperation of his wife in trying to clear his name.

Citing Coolidge, the Supreme Court of Georgia held that there was no search or seizure since the pouch containing the evidence was in plain view and that it came into possession of the police "inadvertently" [14] without motive on their part of locating incriminating evidence by any unlawful search and seizure.

Possibly this represents too simplistic an approach to the Fourth Amendment problem in this case. There are factual differences between Coolidge and Lowe which may have constitutional significance and the search and seizure issue in the latter is more complex than that decided in Division III of Coolidge. However, I think the Supreme Court of Georgia correctly concluded that under facts which it accepted no search or seizure was involved in the removal of the pouch from the car and the subsequent discovery therein of the incriminating letter. A factual basis existed for its ruling. A federal habeas court should adopt the state habeas findings where supported by the record. Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770.[15] The federal court may then make its own conclusions of law. Robinson v. Beto, 453 F.2d 384 (5th Cir.).

This Court concludes that the conduct of the police in taking possession of the packet at the scene of the

13. The many "inventory" cases are collected in the Ninth Circuit decision. 458 F.2d 962.

14. The fact alone that an object is in plain view is "never enough to justify the warrantless seizure of evidence". Coolidge, 403 U.S. 468, 91 S.Ct. 2039. Similarly, discovery of an incriminating item by inadvertence or accident does not legalize an unlawful search. "Inadvertently" coming upon such an object is not the source or base of lawful search and seizure. It is rather a limitation of the right of an officer armed with a warrant or engaged in a valid warrantless search to seize an article not the object of the search. Coolidge, 465–472, 508–509, 516–517, 91 S.Ct. 2022.

15. At the evidentiary hearing in this Court Sergeant Lowery was a witness and reiterated what he had previously testified to in respect to what transpired in regard to the package at the scene of the fire. No specific findings of fact were made by the State trial judge in connection with the motion to suppress. I referred earlier to his expression of disbelief as to the motive claimed by the law enforcement officer in removing the package of papers from the car. Implicit, however, in Judge Harrison's denial of the motion to suppress is acceptance of the State's version. The Supreme Court of Georgia did so. Incidentally, the transcript of the State trial is not a formal part of the record in this Court. Counsel agreed at the hearing that it could be referred to if desired. On appeal the record can be supplemented by the portions thereof deemed pertinent.

crime was not a search or seizure contemplated by the Fourth Amendment and that the subsequent examination of its contents at the station house by way of inventory was not prohibited thereby.

The application of petitioner for the writ of habeas corpus is therefore denied.